IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER GIFT, et al., | : | CIVIL ACTION |
| | : | NO. 11-5285 |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| TRAVID SALES ASSOCIATES, | : | |
| INC., et al., | : | |
| | : | |
| Defendants. | : | |


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              AUGUST 2, 2012

## I.    INTRODUCTION

Plaintiffs Jennifer Gift and Joel Gift (collectively,
"Plaintiffs") bring this employment discrimination action
against Defendants Travid Sales Associates, Inc., Johnson
Controls, Inc., David Laudadio, Donna Laudadio, Walter Doll, and
Gerard McLaughlin (collectively, "Defendants").  Plaintiff
Jennifer Gift alleges that she was subject to pervasive sexual
harassment that resulted in her resignation.  In their Amended
Complaint, Plaintiffs plead eleven claims.  Count I pleads a
claim of sexual harassment in violation of the Pennsylvania
Human Relations Act ("PHRA").  Count II pleads a claim of
retaliation in violation of the PHRA.  Counts III and IV plead
claims of aiding and abetting sexual harassment in violation of

the PHRA.  Count V pleads a claim of intentional infliction of emotional distress.  Count VI pleads a claim of constructive discharge.  Count VII pleads a claim of sexual harassment in violation of Title VII of the Civil Rights Act of 1964.  Count VIII pleads a claim of assault and battery.  Count IX pleads a claim of false imprisonment.  Count X pleads a claim of negligent supervision.  Finally, Count XI pleads a claim of loss of consortium.  Defendants answered denying all averments and asserting a variety of affirmative defenses.  Relevant here, Defendant Johnson Controls avers that Defendant Travid Sales Associates is not its subsidiary and, therefore, Defendant Johnson Controls had no control and did not participate actively or vicariously in any alleged harassment.

Pending before the Court is Defendant Johnson Controls's Motion for Summary Judgment on all counts asserted against it because Defendant Johnson Controls is not a proper defendant in this case.  For the reasons that follow, the Court will grant Defendant Johnson Controls's Motion in part and deny it in part.

## II.   BACKGROUND[1]

Plaintiff[2] began her employment as a sales associate
with Defendant Travid Sales Associates, Inc. ("Travid") in
February 2008.  Travid is a supplier of heating, ventilation,
and air conditioning products.  Defendant Johnson Controls, Inc.
("JCI") manufactures a range of industrial and commercial
products, including commercial and industrial heating,
ventilation, and air conditioning products.  Travid is JCI's
sales representative for JCI products in Berks, Lehigh, and
Northampton Counties.[3]  Defendant David Laudadio ("Laudadio") is
the owner and chief executive officer of Travid and hired
Plaintiff.  Defendant Donna Laudadio is an officer with
supervisory authority at Travid.  Defendant Walter Doll is an
employee at JCI, as is Defendant Gerard McLaughlin.

This case arises from the alleged sexual harassment,
and resulting hostile work environment, by Laudadio.  Plaintiff

---

[1]      In accordance with the appropriate standard of review,
see infra Part III, the Court views the facts in this section in
the light most favorable to Plaintiffs and draws all reasonable
inferences therefrom in Plaintiffs' favor.

[2]      Herein, the Court will refer to Plaintiff Jennifer
Gift as "Plaintiff."

[3]      There is conflicting evidence as to whether Travid was
JCI's exclusive sales representative and also conflicting
evidence of which counties Travid was authorized to sell JCI
products.  See infra Part IV.B.

avers that Laudadio subjected her to various forms of verbal sexual harassment including pointed jokes, pornographic emails, vulgar statements, lewd comments, and other forms of harassment. Plaintiff avers that some of this harassment was by way of email, and that some of these emails were forwarded to JCI employees, specifically, Defendants Doll and McLaughlin. Plaintiff resigned from Travid on May 13, 2010.

As a result of this conduct, Plaintiff filed a complaint against Travid, JCI, Laudadio, and Donna Laudadio in the Court of Common Pleas of Berks County, Pennsylvania, on June 15, 2011.  After removal, the Court held a status and scheduling conference and set limited discovery and summary judgment briefing schedules concerning whether JCI was a proper party to the action.  Thereafter, with leave of Court, Plaintiff filed an Amended Complaint adding Defendants Doll and McLaughlin.

This Memorandum only considers whether JCI may be held liable for Plaintiffs' claims.  Presently, Plaintiffs' Amended Complaint asserts the following claims against JCI: (1) sexual harassment in violation of the PHRA, (2) retaliation in violation of the PHRA; (3) aiding and abetting in violation of the PHRA; (4) intentional infliction of emotional distress; (5) constructive discharge; (6) sexual harassment in violation of

4

Title VII;[4] (7) negligent supervision; and (8) loss of consortium.  Plaintiffs aver JCI was Plaintiff's joint employer, along with Travid.

JCI and Travid's relationship is, at its core, contractual and governed by a Sales Representative Agreement ("Sales Agreement").  See Sales Representative Agreement, Pls.' Br. in Opp'n to Def. JCI's Mot. for Summ. J. Ex. D, ECF No. 34 [hereinafter Pls.' Br.].  The Sales Agreement between York International Corporation (a JCI entity) and Travid provides the details of Travid's sale of JCI products.  Relevant here, the Sales Agreement states that "[t]he relationship between the parties is that of independent contractors."  Id. ¶ 3.  Under the agreement, JCI sets the prices of its products, and JCI can unilaterally alter the prices, terms, and conditions of the sale of its products.  Id. ¶ 5.2.C.  The Sales Agreement provides JCI reasonable access to Travid's books and records.  Id. ¶ 5.2.H. Also in the Sales Agreement, Travid warrants that it will maintain a sales office within the sales territory, maintain necessary trained technical staff to sell JCI products, and maintain necessary administrative staff to support such sales. Id. ¶ 5.2.D.  The Sales Agreement also requires Travid and its

---

[4]      Plaintiffs only plead a violation of Title VII against JCI.  See Notice of Voluntary Dismissal, ECF No. 24.

employees to keep confidential all non-public trade secrets, pricing, margin, product design, and proprietary information. Id. ¶¶ 5.2.G, H.  Moreover, the Sales Agreement requires Travid to procure and maintain liability insurance for the protection of both Travid and JCI.  The agreement is devoid of any mention of JCI's authority to otherwise control Travid employees or to compensate such employees.

      In addition to the Sales Agreement, JCI submitted the affidavits of Laudadio and Louis Ventura, JCI's Systems HVAC Branch Manager of the Allentown branch, in support of its Motion.  Both of these affidavits state that JCI had no authority over Travid employees.  Specifically, JCI had no authority to hire or fire Travid employees.  JCI did not compensate or have any salary control over Travid employees. JCI did not have authority to promulgate work rules for Travid employees, and JCI had no ability to determine how Travid and its employees performed their work.  JCI does state that there were circumstances when JCI and Travid worked jointly on sales projects, but those projects were collaborative efforts. Lastly, JCI had no access to Travid personnel records.

      Plaintiff, by way of affidavit, puts forth additional evidence regarding JCI's status as her employer.  Plaintiff states that she believed a majority of Travid's revenue came

from the sale of JCI products.  Therefore, it was her belief
that JCI paid Travid employees' salaries.  Plaintiff also states
that she attended one meeting at JCI's regional office in
Fogelsville, Pennsylvania.  Moreover, Mr. Ventura and other JCI
employees called Travid's office at least once every other day,
and Plaintiff took their instructions to gather and send out
documents.  Plaintiff often traveled to customer locations to
pick up engineering plans that were part of a transaction
involving JCI products and to drop off JCI price quotes.
Moreover, Plaintiff had access to a password-protected JCI
website that allowed her to tell customers when their JCI
products would ship to them.  Plaintiff further states that one
of Travid's sales managers, Stephen Phillips, called JCI's York,
Pennsylvania location "his office."  Gift Aff. ¶ 15, Pls.' Br.
Ex. H.  Plaintiff states that Mr. Phillips's customers were
close to York, Pennsylvania, and that there were weeks where Mr.
Phillips would be at JCI's York office more than at Travid.[5]
Lastly, in 2010, Plaintiff states that Travid added a commission
component to her compensation such that additional sales of JCI
products would be part of this commission.

---

[5]     JCI disputes this contention and states that Mr.
Phillips did use its office, but that it was not a designated
office for Mr. Phillips.  Mr. Phillips supplied his own office
equipment and could not access the JCI network.

JCI filed a motion for summary judgment arguing that it was not a joint employer for purposes of Title VII and PHRA liability, and also that it could not be liable for Plaintiffs' state-law claims.  ECF No. 25.  Plaintiffs filed an opposition brief.  ECF No. 34.  JCI filed a reply brief.  ECF No. 35.  The motion is now ripe for disposition.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact."  Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party.

"After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)).  While the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

**IV.  DISCUSSION**

JCI moves for summary judgment on all claims asserted against[6] it arguing that under Title VII and the PHRA it was not Plaintiff's employer.[7]

---

[6]     In addition, JCI argues that it is not liable for any of Plaintiffs' state-law claims.  For the reasons set forth below, see infra Part V, the Court declines to reach Plaintiffs' state-law claims, and the Court will deny JCI's Motion as to those state-law claims without prejudice.

[7]     The Court considers claims under Title VII and the PHRA together because Pennsylvania courts interpret the PHRA in accordance with federal discrimination law.  See Weston v. Pennsylvania, 251 F.3d 420, 425 n.3 (3d Cir. 2001).

Plaintiffs contend that JCI was a joint employer of Plaintiff along with Travid.  Am. Compl. ¶ 11.  In the alternative, JCI may be liable under Title VII and the PHRA if Travid and JCI constitute a single employer.  For the reasons provided below, the Court rejects both contentions.

A.   Joint Employer Status

There is a joint employment relationship when "one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer."  Nat'l Labor Relations Bd. v. Browning-Ferris Indus. of Pa., 691 F.2d 1117, 1123 (3d Cir. 1982).  The Third Circuit recognizes this theory of "joint employment" for claims of discrimination under Title VII.  See Graves v. Lowery, 117 F.3d 723, 727 (3d Cir. 1997).  Although the Third Circuit has yet to adopt any formal test for joint employment under Title VII, district courts within this circuit rely on the following three factors when making this determination:

(1)  [A]uthority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours;

10

(2) day-to-day supervision of employees, including employee discipline; and

(3) control of employee records, including payroll, insurance, taxes and the like.

Myers v. Garfield & Johnson Enters., Inc., 679 F. Supp. 2d 598, 607 (E.D. Pa. 2010) (alteration in original).[8]  "No single factor

---

[8]      Recently, the Third Circuit provided a joint employer test for purposes of the Fair Labor Standards Act ("FLSA").  See In re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig., 683 F.3d 462, 469 (3d Cir. 2012).  In Enterprise, the district court applied the same three factors for joint employer status in Title VII cases provided in Myers.  The Third Circuit found that under the FLSA this test was incomplete.  The Third Circuit stressed the FLSA's broad definition of employer.  Id. at 467. The Third Circuit provided that courts in FLSA cases should apply the following four, non-exhaustive factors ("Enterprise factors"):

(1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like.

Id.  The Third Circuit found the original three Myers factors instructive, but held that because the FLSA requires joint employer status when there is "indirect" control, a rote application of the three factors is insufficient.  District courts must not only apply the four Enterprise factors, but must consider the "total employment situation and the economic realities of the work relationship."  Id.  It is apparent to the Court that the Enterprise factors simply re-write the three Myers factors as four inquiries.  The Third Circuit does not consider whether the Enterprise factors apply to Title VII, but stresses the FLSA's unique employer statutory definition. Therefore, Enterprise is distinguishable from this case.  Even considering the "total employment situation" discussed in

is dispositive and a weak showing on one factor may be offset by a strong showing on the other two." Id. at 608. Moreover, "[t]he parties' beliefs and expectations regarding the relationship between the plaintiff and defendant are also relevant." Id.

JCI contends that the affidavits of Laudadio and Mr. Ventura provide that JCI had no authority to hire, fire, or control the terms of Plaintiff's employment. Specifically, JCI had no authority to hire or fire Travid employees and never attempted to do so. Moreover, JCI had no authority to promulgate work assignments and never attempted to do so. And, JCI never provided salary or benefits to Travid employees. Moreover, JCI argues that the testimony of Tracy Hanson, Travid's former co-owner and chief financial officer, supports these contentions. Hanson testified that Travid hired Plaintiff and determined her salary. Hanson Dep. 54:6-7, 57:5-6, Mar. 15, 2012, Def. JCI's Reply Br. in Supp. of Mot. for Summ. J. Ex 1, ECF No. 25 [hereinafter Def. JCI's Reply Br.]. No JCI employee ever supervised Plaintiff or directed her job duties. Id. at 59:16-60:23. JCI did not tell Plaintiff what customers to contact or provide her any specific training. Id. at 63:8-11.

---

Enterprise, JCI, for the reasons discussed below, is not a joint employer under Title VII and the PHRA.

Lastly, Defendant contends that JCI had no control or access over payroll or personnel records.

In the face of these facts, Plaintiffs point to provisions in the Sales Agreement between JCI and Travid to demonstrate that JCI had some modicum of control over Travid's employees.  Specifically, the Sales Agreement provided that JCI could in its sole discretion change Travid's sales territory for JCI products, as well as change the JCI products Travid sold, at any time.  The Sales Agreement also required Travid to retain the "necessary trained technical staff to solicit and execute orders for and promote the use of [JCI] products."  Sales Agreement ¶ 5.2.D.  In addition to the Sales Agreement, Plaintiff declared that JCI employees called Travid at least once every other day during her employment with Travid and that she spoke directly to these individuals when no one else at Travid was available and gathered information at their instruction.  Plaintiff also declares that Travid's office contained JCI-created manuals that employees could review.  Moreover, Travid, by the terms of the contract, had to procure and maintain insurance for itself and JCI.  In addition, JCI listed Travid on its website as a JCI location.  The contract also required Travid to maintain confidentiality about certain JCI products.  Moreover, Plaintiffs point to a provision within

13

the Sales Agreement that provides JCI with reasonable inspection
of Travid's records.  Finally, Plaintiff declares that because
Travid derives revenue from sales of JCI products, that she
believed part of her salary was therefore paid by JCI.


      1.   <u>Authority to hire and fire employees</u>

      Even considering Plaintiffs' submitted evidence, no
reasonable jury could conclude the first <u>Myers</u> factor weighs in
favor of finding JCI a joint employer.  There is simply no
evidence of record that JCI had any authority over the hiring
and firing of Travid employees.  The only evidence that possibly
contradicts this conclusion is in the Sales Agreement.  Therein,
it requires Travid to maintain the "necessary trained technical
staff to solicit and execute orders for and promote the use of
York Products," as well as maintain "the necessary support staff
and administrative processes to . . . enter York Product order
details in a timely and accurate manner."  Sales Agreement ¶
5.2.D.  This agreement does not, however, confer any authority
upon JCI to conduct any hiring or firing, or otherwise control
Travid employees.  Moreover, there is no evidence of record that
JCI provided any direct compensation to Travid employees.

      Plaintiffs' argument that JCI paid Plaintiff's salary
because Travid sold JCI products is without merit.  The same

could be said about any business selling goods.  This lack of
direct payment weighs heavily in favor of finding no joint
employer status.  See Cimino v. Borough of Dunmore, No. 02-1137,
2005 WL 3488419, at *7 (M.D. Pa. Dec. 21, 2005) (finding lack of
direct payment of compensation dispositive).  In the end, there
are simply insufficient facts from which a reasonable jury could
conclude that this factor weighs in favor finding JCI a joint
employer.

      2.   Day-to-day supervision of employees

      Again, under the facts of record, no reasonable jury
could conclude that the second Myers factor weighs in favor of
finding JCI a joint employer, it is at best neutral.  The Sales
Agreement did confer authority upon JCI to control the products
Travid sold and where Travid sold such products.  But, this
authority is not of concern to the Court here because it does
not reflect day-to-day employee duties.  There is some evidence
that Plaintiff took instruction on occasion from JCI employees.
This instruction seems discrete and does not evidence any
significant control over Plaintiff's work.  Moreover, the
confidentiality provision is likewise of little import here.  It
does not significantly affect Plaintiff's day-to-day activities.
At bottom, there is simply insufficient evidence that JCI had

any significant control over employees' conduct at Travid.  See
Cella v. Villanova Univ., No. 01-7181, 2003 WL 329147, at *8
(E.D. Pa. Feb. 3, 2003) (holding no joint employer status
despite some isolated incidents of supervision); Zarnoski v.
Hearst Bus. Commc'ns, Inc., No. 95-3854, 1996 WL 11301, at *9
(E.D. Pa. Jan. 11, 1996) (same).  Accordingly, no reasonable
jury could conclude that this factor weighs in favor of finding
JCI a joint employer.


    3.    Control of employee records

        Lastly, no reasonable jury could find that the last
Myers factor weighs in favor of finding JCI a joint employer.
The Sales Agreement does indeed give JCI the right to reasonable
inspection of Travid's books and record for purposes of auditing
sales figures.  It does not, however, confer upon JCI any
authority to review payroll, personnel files, or other records
not pertaining to sales of JCI products.  Accordingly, no
reasonable jury could conclude that this factor weighs in favor
of finding JCI a joint employer.


    4.    Balance of the factors

        On balance, none of the Myers factors weigh in favor
of finding JCI a joint employer and no reasonable jury could

conclude otherwise.[9]  The relationship between JCI and Travid is one of manufacturer and sales agent.  JCI rightly has control over its products and how Travid sells these products, but JCI and Travid are separate entities and JCI exercises no meaningful control, if any control, over Travid's employees.  Accordingly, the Court finds that no reasonable jury could conclude that JCI is a joint employer for purposes of Title VII and PHRA liability.

B.   Single Employer Status

An alternative to hold JCI liable is if JCI and Travid constitute a single employer.[10]  The Third Circuit explains that two entities may be a single employer in the following three situations: (1) if a company splits into smaller entities to evade Title VII's minimum employee requirement; (2) if a parent

[9]   Even if the second Myers factor is neutral to finding JCI a joint employer, on balance, the limited supervision JCI provided to Plaintiff is insufficient for a reasonable jury to conclude it outweighs the dearth of other evidence demonstrating sufficient control to find JCI a joint employer.  See Cella, 2003 WL 329147, at *8.

[10]   Neither party presents any argument as to whether JCI and Travid constitute a single employer.  But, courts routinely consider both joint employer status and single employer status concurrently.  Moreover, Plaintiffs' arguments generally follow the framework of a single employer analysis.  Therefore, the Court considers whether JCI and Travid constitute a single employer for sake of completeness.

company directs a subsidiary to perform the alleged discrimination; or (3) if the two companies' "affairs are so interconnected that they collectively caused the alleged discriminatory employment practice." Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 86 (3d Cir. 2003).  The record does not support either of the first two situations, but there is evidence of record to warrant an analysis of the third.  Under this third entity-entanglement option, the Court makes an equitable inquiry into whether the "operations of the companies are so united that nominal employees of one company are treated interchangeably with those of another." Id. at 87.  Relevant to this inquiry are the following four, non-exhaustive factors:

> (1)  the degree of unity between the entities with respect to ownership, management (both directors and officers), and business functions (e.g., hiring and personnel matters),

> (2)  whether they present themselves as a single company such that third parties dealt with them as one unit,

> (3)  whether a parent company covers the salaries, expenses, or losses of its subsidiary, and

> (4)  whether one entity does business exclusively with the other.

Id.

Under the facts of this case, the Court finds that no reasonable jury could conclude that JCI and Travid constitute a single employer.

18

With regard to the four <u>Nesbit</u> factors, there is no record evidence to support the first factor.  There are no common officers between JCI and Travid and no record evidence to show common management.  Furthermore, as explained above, there is no record evidence to suggest JCI had any authority to conduct hiring, firing, or other personnel matters.

As to the second factor, there is some evidence that JCI and Travid presented themselves, in some respects, as a single entity.  Though not similar in name or in corporate designation, JCI does list Travid on its website as a JCI "office."  <u>See</u> Johnson Controls Office Locator, Pls.' Br. Ex. G. Moreover, there is record evidence that for all sales over $25,000, all orders were completed on JCI stationary.  Hanson Dep. 13:6-21.  Nonetheless, there is also contradictory evidence.  Principally, Travid is a sales representative for many different lines of products other than products manufactured by JCI.  Accordingly, "third parties" could view this evidence to suggest that JCI and Travid were not a single entity.

With respect to the third factor, and again as explained above, there is no record evidence, other than Plaintiff's own affidavit, that demonstrates JCI in any way directly paid Travid employees' salaries.  To be sure, Plaintiff

19

contends that a majority of Travid's revenue came from sales of JCI products and that it was her belief that she was paid by JCI.  Yet, the same could be said for any manufacturer-sales relationship where one product dominates the revenue stream.  Accordingly, this fact does not move the Court.

As to the final factor, the parties dispute whether they did business exclusively with each other.  It is clear that JCI sold products through many other sales representatives, and that Travid sold other products other than JCI products.  Travid's former chief financial officer Tracy Hanson testified that Travid was JCI's exclusive sales representative for Berks, Lehigh, Northampton, Bucks, and Schuylkill Counties.  The Sales Agreement submitted to the Court is to the contrary.[11]  Therein, it states that Travid would act as a non-exclusive sales representative for JCI products in Berks, Lehigh, and Northampton Counties.

On balance, there is simply insufficient evidence for a reasonable jury to conclude that JCI and Travid constitute a single employer.  The only evidence to support an opposite

---

[11]     Plaintiffs note that the Sales Agreement submitted to the Court is not the agreement in effect at the time of Plaintiff's employment and, as such, does not reflect the exclusivity and correct serviced counties.  See Pls.' Br. 3 n.1. Plaintiffs do not contend that any other material terms of the Sales Agreement differ.

conclusion is de minimis.  Indeed, Nesbit is instructive on this point.  There, the court granted the defendants' motion for summary judgment and found there was insufficient entanglement to consider two entities a single employer.  347 F.3d at 75. Specifically, that case involved two companies, Gears Unlimited, Inc. ("Gears") and Winters Performance Products ("Winters"). Id.  Gears was the plaintiff's employer.  Id. at 76.  Gears's founder Vaughn Winter, Sr. also co-owned, with his wife, Winters.  Id. at 75.  Despite this co-ownership, the court held that the two entities were not a single employer.  Id. at 89. Gears and Winters had different management.  Id. at 88.  The companies also mostly did not co-mingle employment decisions.[12] Gears and Winters did coordinate recruiting job applicants. Yet, the court found persuasive the fact that Gears and Winters did not hold "themselves out to job applicants as a single company."  Id.  Similarly persuasive were the facts that the "two companies' human resources functions were" not entirely integrated, and the two companies maintained separate payrolls. Id. at 89.  In the end, the court found that "common ownership and de minimis coordination in hiring are insufficient bases to

---

[12]    The plaintiff explained that Mr. Vaughn was not her supervisor, but because her supervisor was out of town, Mr. Vaughn actually fired the plaintiff.  Id. at 89.

disregard the separate corporate forms of Gears and Winters,"
and the court found the two entities to be separate.  Id.

Similar to the balancing of factors in Nesbit, there
is some evidence that a third party might view JCI and Travid as
one entity, but there is little other evidence to support single
employer status.  Accordingly, the Court finds that no
reasonable jury could conclude JCI and Travid constitute a
single employer for purposes of Title VII and PHRA liability,
and the Court will grant JCI's Motion for Summary Judgment.


## V.    REMAND TO STATE COURT

In light of the foregoing, Plaintiffs' remaining
claims are state-law claims, asserted as supplemental claims to
Plaintiffs' claim under Title VII against JCI.  Jurisdiction in
this Court was founded upon federal question, in light of this
Title VII claim.  See Notice of Removal ¶ 3, ECF No. 1.  In such
situations, where federal-question jurisdiction extinguishes
after filing of the complaint, the Court has discretion as to
whether to remand any remaining supplemental state-law claims.
See 28 U.S.C. § 1367(c)(3) (2006); Borough of W. Mifflin v.
Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) ("[W]here the claim
over which the district court has original jurisdiction is
dismissed before trial, the district court must decline to

decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.").  This case is still in its infancy with no discovery on the merits having taken place.  Accordingly, the Court will exercise its discretion and remand this case back to the Court of Common Pleas of Berks County.


**VI.  CONCLUSION**

For the reasons set forth above, the Court will grant JCI's Motion for Summary Judgment in part and deny it in part without prejudice.  An appropriate order will follow.